IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CLEAR WITH COMPUTERS, LLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 6:14-CV-00089-LED |
| | JURY TRIAL DEMANDED |
| VOLVO CONSTRUCTION EQUIPMENT NORTH AMERICA, LLC, | |
| Defendant. | |

## VOLVO CONSTRUCTION EQUIPMENT NORTH AMERICA, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

**Page**

I.     STATEMENT OF THE ISSUE ........................................................................ 1

II.    BACKGROUND ........................................................................................... 1

III.   LEGAL STANDARD ................................................................................... 4

IV.   ARGUMENT ................................................................................................ 8

     A.    The asserted independent claims are not patent eligible under
35 U.S.C. § 101. ................................................................................ 8

          1.    The asserted independent claims preempt the abstract idea
of assembling a sales proposal for a customer. ................................... 8

          2.    The asserted independent claims do not contain meaningful
limitations that would render them patent eligible. ........................... 9

          3.    The asserted independent claims fail the Machine-or-
Transformation Test. .......................................................................... 15

V.    CONCLUSION ............................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
    728 F.3d 1336 (Fed. Cir. 2013) ...........................................................................9, 10, 14, 15

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)...........................................................................................................5

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),*
    687 F.3d 1266 (Fed. Cir. 2012) .......................................................................................12, 16

*In re Bilski,*
    545 F.3d 943 (Fed. Cir 2008) (en banc), *aff'd, Bilski v. Kappos*, 130 S. Ct.
    3218 (2010) ...............................................................................................................5, 6, 7, 15

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,*
    No. 6:12-cv-00674-LED, Dkt. No. 116 (E.D. Tex. Jan. 21, 2014) (Davis, J.)
    ...................................................................................................................................2, 7, 10, 15

*CLS Bank Int'l v. Alice Corp.,*
    717 F.3d 1269 (Fed. Cir. 2013) .............................................................................................7

*Cuvillier v. Sullivan,*
    503 F.3d 397 (5th Cir. 2007) ............................................................................................4, 5

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.,*
    Nos. 2012-1673, 2012-1674, 2014 WL 718153 (Fed. Cir. Feb. 26, 2014) .......................7, 16

*Cybersource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) .....................................................................................6, 9, 16

*Dealertrack, Inc. v. Huber,*
    674 F.3d 1315 (Fed. Cir. 2012) .......................................................................................8, 16

*Diamond v. Chakrabarty,*
    447 U.S. 303 (1980)...............................................................................................................5

*Fort Props., Inc. v. Am. Master Lease LLC,*
    671 F.3d 1317 (Fed. Cir. 2012) .............................................................................................7

*Lovelace v. Software Spectrum*,
   78 F.3d 1015 (5th Cir. 1996) .................................................................................5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ................................................................. *passim*

*MySpace, Inc. v. GraphOn Corp.*,
   672 F.3d 1250 (Fed. Cir. 2012) ...........................................................................14

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) ....................................................15

*Sirf Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ...........................................................................16

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 1335 (Fed. Cir. 2013) ................................................................. *passim*

*Ultramercial, LLC et al. v. Hulu, LLC et al.*,
   Case No. 09-CV069180-RGK, 2010 WL 3360098 (C.D. Cal. Aug. 13,
   2010) .......................................................................................................................5

## Statutes

35 U.S.C. § 101 ..................................................................................... *passim*

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6) .......................................................1, 4, 5

U.S. Patent 5,493,490 ..............................................................................................2

U.S. Patent 5,625,776 ................................................................................. *passim*

U.S. Patent 7,606,739 ................................................................................. *passim*

Volvo Construction Equipment North America, LLC ("Volvo") moves to dismiss its case because Clear with Computers, LLC ("CWC") has failed to state a claim upon which relief can be granted. CWC asserts at least Claim 61 of U.S. Patent 5,625,776 ("the '776 Patent") and at least Claim 1 of U.S. Patent 7,606,739 ("the '739 Patent"). However, these patent claims are directed to the abstract idea of assembling a sales proposal for a customer—a common form of targeted marketing. Therefore, these patent claims are ineligible for patent protection under 35 U.S.C. § 101. Resolving these issues does not require additional discovery or claim construction. Therefore, to conserve judicial resources and unnecessary litigation between the parties, Volvo requests that the Court dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.      STATEMENT OF THE ISSUE

The issue for the Court is whether this case should be dismissed for failure to state a claim upon which relief can be granted because asserted Claim 61 of the '776 Patent and Claim 1 of the '739 Patent are invalid for patenting an abstract idea, and therefore, ineligible for patentability under 35 U.S.C. § 101.

## II.     BACKGROUND

On April 11, 2014, CWC filed a lawsuit accusing Volvo of infringing the '776 and '739 patents (collectively, "the patents-in-suit").  The patents-in-suit relate to systems and methods for creating sales proposals using a computer.  (Dkt. No. 1, Ex. A, '776 Patent at 1:9-13; Dkt. No. 1, Ex. B, '739 Patent at 1:15-18.)  The '776 Patent is entitled "Electronic Proposal Preparation System for Selling Computer Equipment and Copy Machines" and the '739 Patent is entitled "Electronic Proposal Preparation System."

Both patents-in-suit claim priority to the same parent—U.S. Patent 5,493,490.   The specifications are nearly identical.[1]

From the '776 Patent, at least independent Claim 61 is being asserted against Volvo.   (*See* Dkt. No. 1, at ¶ 11.)   It generally claims a method of generating a customized sales proposal by asking questions of the customer, and using at least one of the customer's answers to create a proposal by combining a picture of the product, a picture of an equipment environment, and text:

> 61. A computer implemented method of generating a customized proposal for selling equipment to particular customers, the method comprising the steps of:
>
> > a) receiving in the conjurer information identifying a customer's desired equipment features and uses, by
> >
> > > i) presenting the customer with a plurality of questions relating to features and uses of the equipment, and
> > >
> > > ii) receiving in the computer a plurality of answers to the questions, the answers specifying the customer's desired equipment features and uses;
> >
> > b)   storing   equipment   pictures,   equipment environment pictures, and text segments in the computer;
> >
> > c) retrieving equipment information for use in generating the customized proposal, by
> >
> > > i) electronically selecting in the computer a particular equipment picture in response to at least one of the answers,
> > >
> > > ii) electronically selecting in the computer a particular equipment environment picture in response to at least one of the answers, and

---

[1] For example, with the exception of the word "optional" used to describe "environment pictures" in the '776 Patent, both the patents-in-suit use the same description of the invention in the Field of the Invention. *Compare* '776 Patent at 1:917, *with* '739 Patent at 1:15-21.

iii) electronically selecting in the computer a particular text segment in response to at least one of the answers; and

d) automatically compiling the gathered equipment information in the computer into the customized proposal.

From the '739 Patent, at least independent Claim 1 is being asserted against Volvo. (*See id*. at ¶ 14.)  It generally claims a computer product for generating a sales proposal by asking questions of the customer, and using at least one of the customer's answers to assemble stored pictures of the product and an environment, along with text to create a sales proposal:

1. A computer program product readable by a computing system comprising instructions that when executed cause a processor to:

receive answers to a plurality of questions from a specific customer related to at least one of a desired feature and desired use by the customer of a tangible product for sale from a user interface;

automatically select, in response to at least one of the received answers, an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer; and

integrate the selected images and the selected text segment into a proposal for the sale of the product customized to the specific customer such that a single composite visual output can be generated that shows the product in the product environment along with said text segment,

wherein the single composite visual output is generated by:

> a selection device operatively interconnected to an active database, the active database configured to electronically store customer information obtained via the user interface;

> the selection device operatively connected to a static database, the static database storing electronically at least one of, (a) text; (b) pictures or (c) texts and pictures, relating to at least one product; and

> the system dynamically building a template utilizing the selection device to fill in the template to produce the single composite visual output.

The asserted claims use computer and software components to put together a sales proposal for a specific customer based on the customer's response to at least one question. Significantly, however, no new software or computer technology is claimed. Instead, the claims recite an abstract idea implemented by a computer, without claiming any additional features related to these components. Indeed, the claims merely employ the computer and software components to perform general and customary operations.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts

alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996). Although factual allegations are taken as true, legal conclusions are given no deference – those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (the tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir 2008) (en banc) ("*In re Bilski*"), *aff'd*, *Bilski v. Kappos*, 130 S. Ct. 3218 (2010). In order to be actionable, a patent's claims must be drawn to patent-eligible subject matter under § 101. *Id.* at 950. Accordingly, the § 101 inquiry is properly raised on a motion to dismiss under Rule 12(b)(6). *See, e.g., Ultramercial, LLC et al. v. Hulu, LLC et al.*, Case No. 09-CV069180-RGK, 2010 WL 3360098 at *1 (C.D. Cal. Aug. 13, 2010) (granting a Rule 12(b)(6) motion to dismiss because the patent in suit did not cover patentable subject matter under § 101).

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Although this section is given wide scope, the law recognizes three exceptions to patent eligibility. In particular, a patent cannot be obtained for "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303,

308 (1980). Abstract ideas are ineligible for patent protection because a monopoly over such ideas would preempt their use in all fields. *See Bilski*, 130 S. Ct. 3218, 3231 (2010). In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 3255 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

The determination of whether a patent claim is impermissibly directed to an abstract idea is a two-step process. First, the court determines "whether the claim involves an intangible abstract idea." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1349 n.2 (Fed. Cir. 2013). Second, if the claim contains such an abstract idea, the court evaluates "whether meaningful limitations in the claim make it clear that the claim is not the abstract idea itself, but to a non-routine and specific application of that idea." *Id.*

A "claim is not meaningfully limited if it merely describes an abstract idea or simply adds 'apply it.'" *Id.* at 1345 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294, 1297 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent eligible. *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). In addition, a claim is not meaningfully limited "if it contains only insignificant or token pre- or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment." *Ultramercial*, 722 F.3d at 1346. Finally, "a claim is not meaningfully limited if its purported limitations provide no real direction, cover all possible ways to achieve the provided result, or are overly generalized." *Id.; see also Prometheus*, 132 S. Ct. at 1300. Indeed, "simply appending conventional steps, specified

at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Prometheus*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

However, "a claim is meaningfully limited if it requires a particular machine implementing a process or a particular transformation of matter" or if "in addition to the abstract idea, the claim recites added limitations which are essential to the invention." *Ultramercial*, 722 F.3d at 1347. But simply adding a machine or transformation to a method claim does not move the invention into the realm of the patentable; the claimed machine or transformation must impose meaningful limits on the claim's scope. *Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*, Nos. 2012-1673, 2012-1674, 2014 WL 718153, at *3-4 (Fed. Cir. Feb. 26, 2014); s*ee also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,* No. 6:12-cv-00674-LED, Dkt. No. 116 at 8 (E.D. Tex. Jan. 21, 2014) (Davis, J.) (citing *CyberSource*, 654 F.3d at 1375–76 and *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012)).

As this Court recognizes, claim construction is not required to conduct a § 101 analysis. *See Dick's Sporting Goods*, No. 6:12-cv-00674-LED, Dkt. No. 116 at 6-7; *see also Bilski*, 130 S. Ct. 3218, 3231 (2010) (finding subject matter patent ineligible without claim construction); *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269 (Fed. Cir. 2013) (determining whether subject matter was patent eligible without claim construction).

IV.    **ARGUMENT**

A.    **The asserted independent claims are not patent eligible under 35 U.S.C. § 101.**

The asserted independent claims are invalid under § 101 for three reasons.  First, the asserted independent claims are directed to abstract ideas that are not eligible for patent protection. Second, the asserted independent claims do not contain meaningful limitations that restrict the claim to a non-routine and specific application of the idea. *See Ultramercial*, 722 F.3d at 1349 n.2. Finally, the asserted independent claims fail the machine-or-transformation test.

1.    **The asserted independent claims preempt the abstract idea of assembling a sales proposal for a customer.**

Patent eligibility is evaluated from the perspective of the claims.  *Dealertrack*, 674 F.3d at 1334 ("In considering patent eligibility under § 101, one must focus on the claims.").  Here, the asserted independent claims are directed to the abstract idea of assembling a sales proposal for a customer.  *See, e.g.,* '776 Patent at 50:54-52:2; '739 Patent at 39:19-49. To accomplish such targeted marketing, the claims suggest asking the customer questions. In response to receiving at least one answer to those questions, three parts of a proposal for sale are selected: (1) an image of a product for sale; (2) an environment in which the product will be used; and (3) a text segment with information about the product.  '776 Patent at 51:1-9; '739 Patent at 39:26-32.  Then, these three elements are assembled into a single sales proposal for the customer.  '776 Patent at 52:1-2; '739 Patent at 39:33-37. These steps are no more than routine tasks performed to achieve targeted marketing, and therefore, are abstract concepts. *See Prometheus*, 132 S.

Ct. at 1294 (finding that a claim is not rendered patent-eligible by reciting an abstract idea and adding additional steps that merely reflect routine, conventional activity of those who work in the field).  Therefore, the asserted independent claims encompass the abstract idea of preparing a sales proposal for a customer.

### 2. The asserted independent claims do not contain meaningful limitations that would render them patent eligible.

The asserted independent claims do not recite meaningful limitations that render them patent eligible. In fact, the abstract concepts found in the asserted independent claims can be performed by a human using pen and paper, which confirms that they do not qualify for patent protection. *See CyberSource*, 654 F.3d at 1371-72 ("[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas."); *see also id.* at 1372 (finding a method claim invalid under 101 because all the recited "steps can be performed in the human mind, or by a human using a pen and paper"). As discussed above, the claimed steps (*e.g.*, asking questions, receiving at least one answer, and selecting parts of a proposal based on an answer) are no more than routine tasks performed to achieve targeted marketing.  A claim is not rendered patent-eligible by reciting an abstract idea and adding additional steps that merely reflect routine, conventional activity of those who work in the field.  *See Prometheus*, 132 S. Ct. at 1294. And the inclusion of computer and database components in the claim does not alter the analysis because such components do not add meaningful limitations to the claim. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (reasoning that the claim's recitation of

"a database of tasks, a means to allow a client to access those tasks, and a set of rules that are applied to that task on a given event" were insufficient to limit the abstract concept in a meaningful way).

As this Court recognizes, "claiming a computer implementation of a purely mental process that could otherwise be performed without the use of a computer does not render a claim patentable." *Dick's Sporting Goods*, No. 6:12-cv-00674-LED, Dkt. No. 116 at 8 (citing *CyberSource*, 654 F.3d at 1375–76 and *Dealertrack*, 674 F.3d at 1333). Indeed, when "insignificant computer-based limitations are set aside from those claims that contain such limitations, the question under § 101 reduces to an analysis of what additional features remain in the claims." *Accenture*, 728 F.3d at 1345 (quoting *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) (holding claims patent ineligible even when the specification "contains very detailed software implementation guidelines" because "the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer.")).   Here, the asserted claims only contain generalized computer and software components used to implement an abstract concept on a computer, without limiting the abstract concept in a meaningful way.   *See Accenture*, 728 F.3d at 1345 (holding that the recitation of generalized software components, such as a database or an event processor, does not transform a claim to an abstract concept into a patent-eligible system or method).

As the examples below demonstrate, the asserted independent claims can be performed entirely by a human using pen and paper. For example, employing a human actor in Claim 61 of the '776 Patent reveals:

> 61. A ~~computer~~ <u>human</u> implemented method of generating a customized proposal for selling equipment to particular customers, the method comprising the steps of:
>
> a) receiving ~~in the conjurer~~ <u>by a human</u> information identifying a customer's desired equipment features and uses, by
>
> > i) presenting the customer with a plurality of questions relating to features and uses of the equipment, and
> >
> > ii) receiving ~~in the computer~~ <u>by the human</u> a plurality of answers to the questions, the answers specifying the customer's desired equipment features and uses;
>
> b) storing equipment pictures, equipment environment pictures, and text segments ~~in the computer~~ <u>by the human</u>;
>
> c) retrieving equipment information for use in generating the customized proposal, by
>
> > i) ~~electronically~~ selecting ~~in the computer~~ <u>by the human</u> a particular equipment picture in response to at least one of the answers,
> >
> > ii) ~~electronically~~ selecting ~~in the computer~~ <u>by the human</u> a particular equipment environment picture in response to at least one of the answers, and
> >
> > iii) ~~electronically~~ selecting ~~in the computer~~ <u>by the human</u> a particular text segment in response to at least one of the answers; and
>
> d) ~~automatically~~ compiling the gathered equipment information ~~in the computer~~ <u>by the human</u> into the customized proposal.

As illustrated, Claim 61 generally claims the abstract idea of assembling a sales proposal for a customer.  Therefore, the patent eligibility of this claim turns on whether it "contains limitations that meaningfully tie that abstract idea to an actual application of that idea." *Ultramercial*, 722 F.3d at 1349 n.2. But whatever may be disclosed in the specification itself, nothing in Claim 61 indicates any particular way in which the computer is to function.  Indeed, the claimed method could be performed by a human without employing a computer.

For example, a salesperson can receive information from a customer about desired equipment features and uses.  Based on this input, the salesperson can select an equipment picture, an equipment environment picture, and a text segment from among various such pictures and text stored in a binder, notebook, or other repository of information.  Once retrieved, the salesperson can assemble the selected pictures and text into a customized proposal for selling equipment.  The claimed generic computer hardware and software may make the process of assembling the sales proposal quicker or easier, but that does not make the claim patentable.  *See Bancorp*, 687 F.3d at 1279 ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible.").  Because Claim 61 of the '776 patent is directed to the abstract idea of assembling a sales proposal for a customer, it is unpatentable.

Similarly, employing a human actor with a binder in Claim 1 of the '739 Patent reveals:

1. A ~~computer program product readable by~~ <u>human using</u> a ~~computing system~~ <u>binder</u> ~~comprising instructions that when executed cause a processor~~ to:

receive answers to a plurality of questions from a specific customer related to at least one of a desired feature and desired use by the customer of a tangible product for sale ~~from a user interface~~;

~~automatically~~ select, in response to at least one of the received answers, an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer; and

integrate the selected images and the selected text segment into a proposal for the sale of the product customized to the specific customer such that a single composite visual output can be generated that shows the product in the product environment along with said text segment,

wherein the single composite visual output is generated by:

~~a selection device operatively interconnected to an active database, the active database configured to electronically store~~ <u>the human remembering the</u> customer information obtained ~~via the user interface~~;

~~the selection device operatively connected to a static database, the static database~~ <u>a binder</u> storing ~~electronically~~ at least one of, (a) text; (b) pictures or (c) texts and pictures, relating to at least one product; and

~~the system dynamically~~ <u>the human</u> building a template utilizing the ~~selection device~~ <u>binder</u> to fill in the template to produce the single composite visual output.

The steps of Claim 1 of the '739 Patent are not significantly different from the steps of Claim 61 of the '776 Patent.  Moreover, like Claim 61 of the '776 Patent, Claim 1 of the '739 Patent can be performed by a human using pen and paper.  And the use of databases in the claim does not alter the analysis. *See Accenture*, 728 F.3d at 1345 (reasoning that the claim's recitation of "a database of tasks, a means to allow a client to access those tasks, and a set of rules that are applied to that task on a given event" were insufficient to limit the abstract concept in a meaningful way).  For example, a salesperson can receive input from a customer about the features and uses of a tangible product for sale that are of interest to the customer.  Based on this input, the salesperson can select product and environment images and a text segment from a binder, notebook, or other repository of information relating to that product and assemble the selected images and text into a customized sales proposal, and in the process, build a template for outputting the customized proposal.  Because Claim 1 claims only a computer program product for performing an abstract idea, it is not patent eligible under § 101.

As these examples indicate, "cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within Section 101." *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1267 (Fed. Cir. 2012). Because the asserted independent claims do not have meaningful limitations that restrict the claim to a non-routine and specific application of the idea, the asserted independent claims should be held invalid under § 101.  *See Ultramercial*, 722 F.3d at 1349 n.2.

### 3. The asserted independent claims fail the Machine-or-Transformation Test.[2]

Courts often look to the machine-or-transformation test ("MOTT") as "an investigative tool" to assess patent eligibility. *Bilski*, 130 S. Ct. at 3227. Under this test, a process is patentable if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.* at 3225-26. Significantly, however, although the MOTT still remains a "useful and important clue," the Supreme Court has held that it is not the sole test for determining the patent-eligibility of process claims. *Id.* at 3227; *see also Prometheus*, 628 F.3d at 1349.

The asserted independent claims fail both prongs of the MOTT because the recitation of general purpose computer and database components are not meaningful limitations and the assembly of a sales proposal by simply bringing together images and text does not constitute a requisite transformation.

### (a) The asserted independent claims are not tied to a particular machine or apparatus.

A claim does not satisfy the machine prong of the MOTT if the claim as a whole reveals that it only calls for a general purpose computer to perform the abstract idea. *See Dick's Sporting Goods*, No. 6:12-cv-00674-LED, Dkt. No. 116 at 11 (citing *Bancorp*, 687 F.3d at 1273, 1278 (affirming the district court's ruling that a general purpose computer does not satisfy the machine prong of the MOTT test)); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 2012 WL 3985118, at *13 (N.D. Cal. Sept. 11, 2012) ("[M]erely

---

[2] Although the machine-or-transformation test is applied to process claims, the Federal Circuit has stated that "system claims that closely track method claims and are grounded by the same meaningful limitations will rise and fall together." *Accenture*, 728 F.3d at 1341.

identifying general 'machine elements' does not satisfy the MOTT; were that so, virtually any use of devices beyond the human body for a claimed method would satisfy the test.").

Here, nothing in the asserted independent claims distinguish the recited computer components from a general purpose computer. In particular, the asserted independent claims do not "specify how the computer hardware and database are specially programmed to perform the steps in the patent." *Dealertrack*, 674 F.3d at 1333. In addition, the computer components "add[] nothing of significance to the claimed abstract idea." *Cyberfone*, 2014 WL 718153, at *3. Indeed, as illustrated above, the recited actions can just as easily be performed by a human. *Cf. Sirf Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010) (holding that the GPS receiver is essential to the process claim because a human cannot receive satellite signals). Of course, "[u]sing a computer to accelerate an ineligible mental process does not make that process patent-eligible." *Bancorp*, 687 F.3d at 1279. Therefore, the asserted independent claims fail the machine prong of the machine-or-transformation test.

> **(b)** **The asserted independent claims do not transform a particular article into a different state or thing.**

"[M]ere manipulation or reorganization of data . . . does not satisfy the transformation prong." *Cybersource*, 654 F.3d at 1375. Here, the asserted independent claims merely assemble a sales proposal that is the result of bringing together an image of a product for sale, an image of an environment for the product, and textual information about the product. According to CWC, the proposal can be created by

cutting and pasting the relevant images and text into a single proposal. Because such a proposal is merely a collage formed by reorganizing and bringing together the relevant images and text, it is not transformative.  In other words, the result of the claimed process is nothing more than the sum of its parts.  For this reason, the asserted independent claims also fail the transformation prong.

## V.    CONCLUSION

Because the asserted claims do not embrace patentable subject matter under § 101, Volvo respectfully requests the Court dismiss this case for failure to state a claim upon which relief can be granted.

Dated:  April 24, 2014                     Respectfully submitted,


                                           By:   _/s/ Neil J. McNabnay_____
                                                 Neil J. McNabnay
                                                 njm@fr.com
                                                 Texas Bar No. 24002583
                                                 Michael A. Bittner
                                                 mrb@fr.com
                                                 Texas Bar No. 24064905
                                                 James Youngkwang Wang
                                                 wang@fr.com
                                                 Texas Bar No. 24084042

                                                 FISH & RICHARDSON P.C.
                                                 1717 Main Street, Suite 5000
                                                 Dallas, TX  75201
                                                 (214) 747-5070 (Telephone)
                                                 (214) 747-2091 (Facsimile)

                                                 **ATTORNEYS FOR VOLVO
                                                 CONSTRUCTION EQUIPMENT NORTH
                                                 AMERICA, LLC**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 24, 2014, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                           _/s/ Neil J. McNabnay_____
                                           Neil J. McNabnay