**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **CLEAR WITH COMPUTERS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | **Case No. 6:14-cv-79** |
| | § | |
| **v.** | § | **Consolidated Lead Case** |
| | § | |
| **ALTEC INDUSTRIES, INC.** | § | |
| | § | |
| **Defendant.** | § | |

| | | |
|---|---|---|
| **CLEAR WITH COMPUTERS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No. 6:14-cv-89** |
| **v.** | § | |
| | § | |
| **VOLVO CONSTRUCTION** | § | |
| **EQUIPMENT NORTH AMERICA, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER**

Before the Court is Defendant Volvo Construction Equipment North America, LLC's

("Volvo") Motion to Dismiss for Failure to State a Claim (Dkt. No. 12 in Case No. 6:14-cv-89).

Also before the Court are several Notices of Joinder in Volvo's Motion filed by the other

defendants in the consolidated lead case (Dkt. Nos. 30, 32, 37 in 6:14-cv-79).  For the reasons set

forth below, the Court **GRANTS** Volvo's Motion and holds that the two challenged claims of

the two patents in suit are invalid on the ground that they are directed to unpatentable subject

matter.

1

**BACKGROUND**

On February 11, 2014, Plaintiff Clear with Computers, LLC ("CWC") filed actions against each of the five defendants[1] asserting infringement of at least claim 1 of U.S. Patent No. 7,606,739 ("the '739 Patent") and at least claim 61 of U.S. Patent No. 5,625,776 ("the '776 Patent"). In November 2014, the Court consolidated these actions under the lead case, No. 6:14-cv-79. On December 8, 2014, CWC served its infringement contentions on each of the defendants. *See* Notice of Service, Dkt. No. 25.[2]

Prior to consolidation, in April 2014 Volvo filed the instant Motion seeking dismissal on the basis that the two then asserted claims are not patent eligible under 35 U.S.C. § 101. After consolidation, in December 2014 the other consolidated defendants each filed Notices of Joinder in Volvo's Motion. Dkt. Nos. 30, 32 & 37. In addition to the two claims challenged in Volvo's Motion, some of the notices also challenge claims 2–3, 7–8, 11–13, and 17–18 of the '739 Patent, which were asserted in CWC's December 8, 2014 infringement contentions. *See, e.g.*, Bad Boy's Notice of Joinder, Dkt. No. 32 at 1 n.1. Given that the state of the law under § 101 (particularly regarding computer-implemented inventions) has witnessed substantive developments over the months since briefing was completed in Volvo's Motion, these notices spawned several additional rounds of briefing, which the Court has considered. *See* Dkt. Nos. 30, 33, 42 & 43.

At a prior case management conference, the Court stayed all deadlines until the Court ruled on Volvo's Motion. Order Setting Hearing, Dkt. No. 36. Also, the Court held a hearing on

---

[1] The defendants remaining in this consolidated action at the time of this Order are Volvo, Altec Industries, Inc., Bad Boy Mowers, Inc., Bad Boy Inc., and The Men's Wearhouse, Inc.

[2] Unless otherwise noted, all Docket Number citations refer to docket entries in case 6:14-cv-79.

Volvo's Motion, including arguments raised in consolidated defendants' notices, on February 4,

2015.

The patents-in-suit relate to computer-implemented systems and methods for creating a

sales proposal.   The two asserted patents descend from a common parent, U.S. Patent No.

5,493,490 (Dkt. No. 13 at 4 in 6:14-cv-89) and there is no dispute that the specifications are

nearly identical.  The '776 Patent is entitled "Electronic Proposal Preparation System for Selling

Computer Equipment and Copy Machines" and was issued on April 29, 1997.   Asserted

independent claim 61 of the '776 Patent provides as follows:

> **61.** A computer implemented method of generating a customized proposal for
> selling equipment to particular customers, the method comprising the steps of:
>    a) receiving in the conjurer information identifying a customer's desired
>    equipment features and uses, by
>        i) presenting the customer with a plurality of questions relating to features
>        and uses of the equipment, and
>        ii) receiving in the computer a plurality of answers to the questions, the
>        answers specifying the customer's desired equipment features and uses;
>    b) storing equipment pictures, equipment environment pictures, and text
>    segments in the computer;
>    c) retrieving equipment information for use in generating the customized
>    proposal, by
>        i) electronically selecting in the computer a particular equipment picture in
>        response to at least one of the answers,
>        ii) electronically selecting in the computer a particular equipment
>        environment picture in response to at least one of the answers, and
>        iii) electronically selecting in the computer a particular text segment in
>        response to at least one of the answers; and
>    d) automatically compiling the gathered equipment information in the
>    computer into the customized proposal.

The '739 Patent is entitled "Electronic Proposal Preparation System" and was issued on

October 20, 2009.  Asserted independent claim 1 of the '739 Patent provides as follows:

> **1.** A computer program product readable by a computing system comprising
> instructions that when executed cause a processor to:
>    receive answers to a plurality of questions from a specific customer related to
>        at least one of a desired feature and desired use by the customer of a
>        tangible product for sale from a user interface;

automatically select, in response to at least one of the received answers, an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer; and

integrate the selected images and the selected text segment into a proposal for the sale of the product customized to the specific customer such that a single composite visual output can be generated that shows the product in the product environment along with said text segment,

wherein the single composite visual output is generated by:

a selection device operatively interconnected to an active database, the active database configured to electronically store customer information obtained via the user interface;

the selection device operatively connected to a static database, the static database storing electronically at least one of, (a) text; (b) pictures or (c) texts and pictures, relating to at least one product; and

the system dynamically building a template utilizing the selection device to fill in the template to produce the single composite visual output.

Although CWC asserts dependent claims 2–3, 7–8, 12–13, and 17–18 and independent claim 11 of the '739 Patent in its infringement contentions served after Volvo filed this Motion, the parties focused their subsequent Notice of Joinder briefing and oral arguments nearly exclusively on the two independent claims set forth above.  Upon cursory review of these additional claims and the relatively insignificant limitations[3] they introduce, the Court believes that detailed analysis of these claims would be unlikely to affect the outcome of this case.  In any event, at the hearing the parties stipulated that all claims against all defendants would be dismissed if the Court grants Volvo's Motion.  Accordingly, the Court limits its analysis to claim 1 of the '739 Patent and claim 61 of the '776 patent.

---

[3] For instance, claims 2 and 3 further comprise displaying the proposal on a computer monitor, claims 7 and 8 further comprise including product specifications and performance specifications in the proposal, where the products are available in a variety of configurations.  Claims 11, 12–13, and 17–18 are method claims that correspond to the computer program claims 1, 2–3, and 7–8.

**DISCUSSION**

**A. The Standard for Granting Motions to Dismiss Under Rule 12(b)(6)**

A complaint attacked by a Rule 12(b)(6) motion to dismiss must contain sufficient factual allegations to show that the plaintiff is plausibly entitled to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant.  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Under certain circumstances, a determination of patent validity under § 101 may be made at the pleading stage on a motion to dismiss.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 at 717 (Fed. Cir. 2014) (affirming dismissal under Rule 12(b)(6) because the asserted patent did not claim patent-eligible subject matter).  However, while the issue of patentable subject matter presents a question of law, the legal analysis "may contain underlying factual issues."  *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). Under the circumstances of this case, there are no material factual disputes that prevent the Court from deciding the Motion at this time.

CWC disputes only Volvo's characterization of the claimed elements as "routine tasks" and Volvo's assertion that the claims are directed to the abstract idea of assembling a sales proposal for a customer.  *See* Pl.'s Resp. at 9, Dkt. No. 13 in 6:14-cv-89.  The Court does not need to accept Volvo's characterization or assertion and can formulate a characterization of the

claims without construing the claims.[4]   *See Ultramercial*, 772 F.3d at 715 (concluding that

"[w]ithout purporting to construe the claims, as the district court did not," the claims are directed

to an abstract idea implemented with "routine, conventional activity").

To the extent that CWC suggests that Volvo's motion is premature prior to claim

construction, *see, e.g.*, Pl.'s Am. Resp. at 7–8, Dkt. No. 45, the particular facts of this case

indicate that claim construction is unnecessary.  Here, the claim language is relatively simple and

neither party has identified any disputes presently ripe for claim construction.  Furthermore, the

Court sees no reason to delay its § 101 ruling while the parties continue to expend significant

resources which will not impact or aid the Court in reaching this decision.

**B. Patentable Subject Matter under 35 U.S.C. § 101**

Volvo contends that CWC's asserted claims are invalid under § 101 because they are

directed to a patent-ineligible application of an abstract idea.  Under the framework explained by

the Supreme Court in *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014), the patent

eligibility of a claim is determined using a two-step process.  First, the Court must "determine

whether the claims at issue are directed to" an abstract idea.  *Id.*   Second, the Court must

"consider the elements of each claim both individually and 'as an ordered combination' to

determine whether the additional elements 'transform the nature of the claim' into a patent-

eligible application."  *Id.*  (quoting *Mayo Collaborative Services v. Prometheus Laboratories,*

*Inc.*, 132 S. Ct. 1289, 1297–98 (2012)).

Here, the asserted claims are directed to the abstract idea of creating a customized sales

proposal for a customer.  Based on the "concept embodied by the majority of the limitations" of

---

[4] Further, while prior constructions are not binding on this action, the Court notes that it has previously construed
these claims and claims from patents of the same family numerous times, most recently in June 2014. *See Clear
with Computers v. Fishing Holdings, LLC dba Ranger Boats*, No. 6:13-cv-161, Dkt. No. 181 at 2 (E.D. Tex. June
13, 2014).

the claims, *see Ultramercial*, 772 F.3d at 715, the claims recite a simple invention.  Reduced to

its conceptual elements, Claim 61 of the '776 Patent recites a computer-implemented method to

(1) present questions to, and receive answers from, a customer regarding products for sale; (2)

based on at least one answer, select a picture of the product, a picture of the product

environment, and a textual product description; and (3) put the pictures and text into a single

visual output as part of a customized proposal for sale.  '776 Patent at 50:54–52:02.  The claim

also states that the pictures and text are stored on a computer.  *Id.*  Further, Claim 1 of the '739

patent recites a computer program product configured to perform the same conceptual steps but

also adds that customer information is stored in an "active database."  '739 Patent at 39:19–49.

The steps performed by the claimed computer elements are functional in nature and could

easily be performed by a human.  The claims essentially propose that, instead of a human

salesman asking customers about their preferences and then creating a brochure from a binder of

product pictures and text and using a rolodex to store customer information, a generic computer

can perform those functions.  CWC contends that the idea is not abstract because it is not "a

longstanding commercial practice of the type at issue in *Alice* and *Bilski*."  Pl.'s Am. Resp. at 6,

Dkt. No. 45.  This Court disagrees.  There is no meaningful distinction for § 101 purposes

between the abstract concept embodied by these claims and the abstract ideas identified in prior

cases, and CWC points to none.

To be clear, the Court does not hold that all claims in software-based patents are directed

to an abstract idea.  Indeed, the contours are often unclear between those inventions that are

directed to an abstract idea and those that are not.  *See Alice*, 134 S.Ct. at 2354 ("At some level,

'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or

abstract ideas.'" (quoting *Mayo*, 132 S.Ct. at 1293) (ellipses in original)).  However, the claims

in this particular case plainly fall within the category of claims that, without some additional inventive concept, are directed to abstract ideas which are ineligible for patent protection.

As step two, the Court "examine[s] the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S.Ct. at 2357 (quoting *Mayo*, 132 S.Ct. at 1294, 1298) (internal quotation marks omitted).  "A claim that recites an abstract idea must include additional features" which "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quoting *Mayo*, 132 S.Ct. at 1298 and *Alice*, 134 S.Ct. at 2357) (internal quotation marks omitted).

CWC identifies several elements of claim 1 of the '739 Patent which it contends provide meaningful limitations: "automatically select[ing]," "dynamically building a template," "single composite visual output," "static database," and "active database."  Pl.'s Resp. at 11, 16, Dkt. No. 13 in 6:14-cv-89.  Neither these elements nor any other limitations in claim 1 provide an inventive concept sufficient to confer patent eligibility.  A general purpose computer with minimal programming can perform functions "automatically" and "dynamically," and implementation of an abstract idea on such a computer is not an inventive concept. *See Alice*, 134 S.Ct. at 2358 ("Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional feature[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" (quoting *Mayo*, 132 S.Ct. at 1297) (alterations in original)).  Likewise, the "static" and "active" databases are generic computer components used for storing data.  Although CWC casts these computer components as something more meaningful than a generic "data storage unit," Pl.'s Resp. at 16, Dkt. No. 13 in 6:14-cv-89, the "static" and "active" modifiers merely reflect the claimed

functions they perform.   They are analogous to a binder full of static pictures and text and a rolodex of updateable customer information, respectively.  *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not.").   Thus, considered individually, the claimed elements do not "add *enough*" to allow the claim to qualify as patent-eligible.[5]  *See Mayo*, 132 S.Ct. at 1297.  The challenged claims also fail the second step of the *Alice* framework because they contain no meaningful limitations preventing the patentee from obtaining a monopoly over the abstract idea itself.

Next, CWC argues "[m]any of the steps in the challenged claims require complex computer programming in order to accomplish them in a computer environment."  Pl.'s Am. Resp. at 9, Dkt. No. 45.  Although verbose, the claims as a whole broadly recite a simple process which, in this case, does not require the type of complex programming that confers patent eligibility.   Importantly, the claims in no way "purport to improve the functioning of the computer itself."  *See Alice*, 134 S.Ct. at 2359.   Likewise, the claimed invention is not "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).   Instead, the problem addressed by the invention is the "limited value" customers place upon generic, preprinted brochures, which "are not particularly appealing or persuasive for any customer." '739 Patent at 2:03–15; '776 Patent at 2:03–15.  The claims

---

[5] Claim 61 of the '776 Patent contains even fewer computer-related limitations.  CWC identifies the "electronically selecting" and "automatically compiling" steps as those that require "complex computer programming."  Pl.'s Am. Resp. at 9, Dkt. No. 45.  These limitations do not provide a sufficient inventive concept for the same reasons explained above with respect to the '739 Patent.

here invoke computer technology only to take advantage of the relative ease by which a computer, rather than a human salesman, could create individualized sales proposals to solve this problem. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly . . . .").

Neither do the claims "effect an improvement in any other technology or technical field." *See Alice*, 134 S.Ct. at 2359. The claims identify no inventive algorithms or otherwise creative means for generating a customized sales proposal other than an instruction that the basic process be performed using generic computer components. In *Ultramercial*, the Federal Circuit held that the patented steps of "receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer to access the media, and receiving payment from the sponsor of the ad" using computers and the internet were directed to a patent-ineligible abstract idea. 772 F.3d at 715. If the instant claims can be said to involve complex computer programming, then the claims at issue in *Ultramercial* can be said to require at least the same level programming complexity. *See id.* However, the instant claims and the *Ultramercial* claims fail for the same reason: they comprise only "conventional steps, specified at a high level of generality, which is insufficient to supply an inventive concept." *Id.* at 716 (quoting *Alice*, 134 S.Ct. at 2357) (internal quotation marks omitted).

Further, although CWC contends that "the machine or transformation test is less relevant to the Information Age claims like those at issue here," CWC nevertheless argues that the claims satisfy the machine prong. Pl.'s Resp. at 17, Dkt. No. 13 in 6:14-cv-89. For the reasons explained above, the claims fail the machine prong because the claim recites only generic

computer components configured to perform otherwise conventional steps. *See Ultramercial*, 772 F.3d at 717 ("Any transformation from the use of computers or the transfer of content between computers is merely what computes do and does not change the analysis.").

Finally, CWC contends that the validity of the '739 Patent was tested and upheld in prior litigation. Pl.'s Resp. at 10, Dkt. No. 13 in 6:14-cv-89. In *Clear with Computers, LLC v. Hyundai Motor Am., Inc.*, No. 6:09-cv-479, 2012 WL 8144915 (E.D. Tex. Jan. 9, 2012), this Court denied defendant Hyundai's motion for judgment as a matter of law of invalidity of claim 1 of the '739 Patent under 35 U.S.C. §§ 102 and 103. On appeal, the Federal Circuit affirmed in a one-word *per curiam* judgment. *Clear with Computers, LLC v. Hyundai Motor Am., Inc.*, 496 F. App'x 88 (Fed. Cir. 2013). CWC argues that if the claim "preempted the abstract idea of preparing a sales proposal for a customer as alleged by [Volvo], it certainly would have been found anticipated or obvious in the *Hyundai* case over the prior art that addressed the same fundamental concept." Pl.'s Resp. at 10, Dkt. No. 13in 6:14-cv-89. CWC relies too much on the patents' prior history before this Court; the patent eligibility of these claims *under § 101* is an issue of first impression. Although "the § 101 patent-eligibility inquiry and, say, the § 102 novelty inquiry might sometimes overlap," *Mayo*, 132 S.Ct. at 1304, the fact that the claim previously passed novelty and nonobviousness hurdles does not necessarily preclude invalidation under § 101 in this case. *See Ultramercial*, 772 F.3d at 716 ("That some of the [claimed steps] were not previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims at issue.").

## CONCLUSION

For the reasons set forth above, the Court holds that claim 1 of the '739 Patent and claim 61 of the '776 Patent are invalid under 35 U.S.C. § 101 and therefore **GRANTS** Volvo's Motion to Dismiss (Dkt. No. 12 in 6:14-cv-89).  Additionally and pursuant to the parties' stipulations made in open court at the hearing on this motion, the Court further **DISMISSES** all of CWC's claims against each of the remaining defendants in this consolidated lead case (6:14-cv-79).

**So ORDERED and SIGNED this 3rd day of March, 2015.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE